NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Hon. Garrett E. Brown, Jr. |
| Plaintiff, ) | Civil Action No. 09-3516 |
| v. ) | **MEMORANDUM OPINION** |
| $140,000.00 IN UNITED STATES CURRENCY, ) | |
| Defendant *in rem*. ) | |

**BROWN, Chief Judge:**

This matter comes before the Court upon the motion (Doc. No. 5) filed by Plaintiff United States of America (the "Government") to strike the Answer of Would-be Claimants Madeline Azouki and Sharbel Azouki (collectively "Would-be Claimants") and for entry of default judgment in this *in rem* asset forfeiture action.[1]  For the following reasons, this Court will grant the Government's motion.

### Background

On February 27, 2009, the Drug Enforcement Agency (DEA) seized $140,000 in U.S. currency ("Defendant Property") from Sharbel Azouki in Newark, New Jersey.  DEA agents found the Defendant Property in a false compartment behind the rear seat of Sharbel Azouki's

---

[1]This matter was reassigned to the undersigned by Order of March 15, 2010.

1

vehicle after he signed a consent form allowing a search of his vehicle.[2]  In March 2009, the DEA initiated administrative forfeiture proceedings and sent a Notice of Seizure to various addresses provided by Sharbel Azouki.  Although two of the attempts to notify Sharbel Azouki were returned as non-deliverable, an employee of the Law Offices of Richard M. Roberts contacted the DEA in April 2009 and requested that a Notice of Seizure be sent to Mr. Roberts.  After the DEA did so, counsel filed on April 21, 2009, an administrative claim to the property at issue on behalf of Madeline Azouki, Sharbel Azouki's mother.  Sharbel Azouki never filed an administrative claim in this matter.

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983 *et seq.*, Madeline Azouki's filing of an administrative claim required the Government to file a judicial forfeiture complaint within 90 days.  *See* 18 U.S.C. § 983(a)(3)(A).  On July 17, 2009, the Government timely filed the instant Verified Complaint for Forfeiture *in rem* ("Complaint") (Doc. No. 1) with regard to the property at issue.  The Government shortly thereafter filed a Warrant for Arrest *in rem* ("Warrant") (Doc. No. 2) and served a Notice of Forfeiture ("Notice") (Doc. No. 3) upon Mr. Roberts as counsel for Madeline Azouki.  Both the Warrant and the Notice stated that, pursuant to statute and Supplemental Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, any person claiming an interest in the Defendant Property must file a Claim under penalty of perjury not later than 35 days from notice of the Complaint.  The Warrant and Notice provided

---

[2] In his Answer, Sharbel Azouki contends that the search of his vehicle was unlawful due to lack of probable cause, and that he gave consent to the search under duress.  This Court need not examine the merits of Sharbel Azouki's purported defense to forfeiture because, as the Court explains in this Opinion, the Would-be Claimants lack statutory standing.

that the Claim must adhere to the requirements of 18 U.S.C. § 983(a)(4)(A) and Rule G(5), and the Notice stipulated that any Claim must be filed by August 26, 2009.  Both the Warrant and Notice also stated, pursuant to statute and rule, that "any person having filed such a claim must *also* file an Answer to the complaint not later than 20 days after the filing of the Claim." (emphasis added).

On August 28, 2009, two days outside of the period stipulated by the Government's filings, the Would-be Claimants filed a purported Answer for Forfeiture *in rem*  (Doc. No. 4) ("Answer").  Attached to the Answer are two forms of a Certification of Madeline Azouki stating that she is a claimant of the Defendant Property and that she has a "proprietary interest in the items seized."  The Certifications provide no further details regarding the nature of her interest. The two Certifications also state that if any statements made in the documents were willfully false, the signer would be subject to punishment.  The second Certification attached to the Answer was filed as part of with Madeline Azouki's administrative claim, as it was signed and notarized on April 15, 2009, bears the case number of the administrative proceeding, and references 18 U.S.C. § 983(a)(2)(D), the statutory provision governing nonjudicial forfeitures. (Answer at 7.)  This Certification appears in an exhibit to the Government's present motion as part of Madeline Azouki's administrative claim.  (Hieronymus Decl., Ex. 10 at 2, 6.)  Therefore, this Court will refer to this second Certification as the "Administrative Claim Certification."

The first Certification attached to the Answer (hereinafter "Answer Certification") contains nearly identical language to the Administrative Claim Certification, but substitutes the docket number of the instant matter for the administrative case number and administrative statutory provision.  However, this document was filed unsigned by Madeline Azouki and was

not notarized.  The record fails to indicate that a verified, signed, and notarized version of the Answer Certification was ever filed or served upon the Government.

On October 5, 2009, the Government moved to strike the Answer pursuant to Rule G(8)(c)(i) and for the entry of default judgment.  Rule G(8)(c)(i) allows the Government to move to strike a claim or answer for failure to comply with Rule G(5) or because the potential claimant lacks standing.  The Government contends that the Would-be Claimants failed to comply with the statutes and rules governing asset forfeiture actions and therefore lack statutory standing to pursue their claims.

### *Analysis*

To contest a judicial forfeiture, a claimant must satisfy the standing requirements of Article III and CAFRA.  *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007).  "Statutory standing is a *threshold* issue that determines whether a party is properly before the court." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 150 n.9 (3d Cir. 2003) (emphasis in original).  To establish statutory standing in an asset forfeiture action, a claimant must comply with the requirements provided by 18 U.S.C. § 983(a)(4) and Rule G(5). *U.S. v. $39,557.00, More or Less, in U.S. Currency*, __ F. Supp. 2d __, No. 07-449, 2010 WL 475279, at *3 (D.N.J. Feb. 9, 2010).  The Third Circuit has followed the guidance of other circuits in holding that "forfeiture claimants must *strictly adhere* to the filing requirements to perfect standing."  *$487,825.00*, 484 F.3d at 665 (emphasis added) (collecting cases).

Section 983(a)(4)(A) stipulates that any person claiming an interest in seized property in a judicial forfeiture action may file a claim in accordance with the Supplemental Rules.  Rule

G(5)(a) states that a claim must be filed "by the time stated in a direct notice sent under Rule G(4)(b)" by the Government to known potential claimants, and Rule G(4)(b)(ii)(B) provides that such time to file a claim must not be less than 35 days after notice is sent.  Here, the Government stated in the Notice that any claim must be filed no later than August 26, 2009.  Rule G(5)(a) dictates the required content of a claim:  the claim must "(A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)."

Section 983(a)(4)(B) contemplates the filing of an answer in addition to a claim, as it states that a person asserting a judicial claim in accordance with § 983(a)(4)(A) "shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim."  18 U.S.C. § 983(a)(4)(B).  Rule G(5)(b) also provides for the separate filing of an answer.

Of the various requirements for statutory standing, the Third Circuit has held that "[t]he most significant requirement is that the claimant must file a verified [claim]" adhering to the requirements of the Rule.  *$487,825.00*, 484 F.3d at 664.[3]  The verified claim requirement promotes two important purposes:  it forces potential claimants to come forth in a timely fashion so that the court may hear all interests and resolve the matter without undue delay, and it guards against false claims by requiring claims to be verified.  *Id.* at 664-65.  "For these reasons, the requirement 'is no mere procedural technicality.'" *Id.* at 665 (quoting *United States v. $23,000 in*

---

[3] The Third Circuit in *$487,825.00* addressed Rule C(6)(a), the predecessor to current Rule G.

*U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004)).

This Court concludes that the Would-be Claimants have failed to meet several of the requirements of the statute and Rule G(5), and therefore their Answer must be stricken because the Would-be Claimants lack standing. Neither Would-be Claimant has filed a claim in compliance with Rule G(5). The Answer itself does not constitute a verified claim under § 983(a)(4)(a) or Rule G(5); indeed, the statute and rule provide for the separate filing of an answer *in addition to* a verified claim, not as a substitute for one. *See United States v. $49,400.00 in U.S. Currency*, No. 08-205, 2009 WL 2591384, at *1 (N.D. Miss. Aug. 20, 2009) (stating that "the filing of a claim is a prerequisite to the right to file an answer and to defend on the merits"). Moreover, the Answer was not verified or signed by either Would-be Claimant, as required for a proper claim under Rule G(5)(a)(i)(C).

Even if the Answer could somehow qualify as a claim under Rule G(5), it was impermissibly filed two days late. Would-be Claimants assert that the untimeliness of the filing was due to counsel's excusable neglect during the relocation of counsel's office that resulted in a mistaken understanding of the due date for the claim.[4] However, Would-be Claimants have invoked counsel's office relocation not only to explain this late filing, but also to secure two extensions on time to file opposition to the Government's instant motion, and therefore have asserted office relocation to justify delay from late August to early November 2009. Would-be Claimants recognize that courts require strict adherence with filing deadlines in forfeiture cases but ask this Court to make an exception here in light of the minimal delay, asserted lack of

---

[4]Would-be Claimants assert that the Notice provided that the "Answer" must be filed no later than August 26, 2009, but the Notice clearly states that a *claim* must be filed no later than that date, and separately discusses the due date for the answer.

6

prejudice, and the large sum of money involved.  Even if this Court were inclined to grant Would-be Claimants' request, lack of timeliness is not the only infirmity that deprives them of standing.

Sharbel Azouki has never filed any verified claim at any point during the administrative proceedings or in the matter before the Court.  Therefore, Sharbel Azouki lacks statutory standing.  The two untimely Certifications of Madeline Azouki do not comply with the requirements of Rule G(5)(a)(i) even if they had been timely filed, and therefore Madeline Azouki also lacks statutory standing.  The Administrative Claim Certification, although attached to the Answer, does not constitute a proper claim in this judicial forfeiture action.  A court in this District recently struck a claim where the potential claimant offered as his claim an affidavit filed in the prior administrative proceeding.  *$39,557.00*, __ F. Supp. 2d __, 2010 WL 475279, at *4.  The court rejected this document as a valid claim under Rule G(5) because "it was submitted in support of [the potential claimant's] claim in the administrative forfeiture proceeding and was, therefore, sworn to before the filing of the civil forfeiture proceedings."  *Id.*  For the same reasons, and also because it fails to identify sufficiently Madeline Azouki's interest in the Defendant Property, this Court concludes that the Administrative Claim Certification does not qualify under Rule (G)(5) as a proper claim in this judicial proceeding.  *See United States v. $31,852.38 in U.S. Currency*, 183 F. App'x 237, 240-41 (3d Cir. 2006) (concluding that verified claims filed in administrative proceedings did not suffice to confer statutory standing in judicial forfeiture action and therefore affirming the striking of claim); *United States v. $7,000.00 in U.S. Currency*, 583 F. Supp. 2d 725, 735 n.15 (M.D.N.C. 2008) (noting that administrative claims "are not a substitute for filing a verified claim in the judicial forfeiture action because summary

administrative forfeitures and judicial forfeitures are separate proceedings") (quoting *United States v. $48,000 U.S. Currency*, No. 06-10952, 2007 WL 1467158, at *3 (E.D. La. May 18, 2007)).

The other Certification attached to the Answer, the Answer Certification, also fails to comply with the requirements of Rule G(5).  The Answer Certification is not signed or notarized by Madeline Azouki, and therefore violates the verification requirement of Rule G(5)(a)(i)(C).  Furthermore, the Answer Certification contains no description of Madeline Azouki's interest in the Defendant Property beyond that she has a "proprietary interest."  This "bald assertion of ownership" does not satisfy the mandate of Rule G(5)(a)(i)(B) that the verified claim state the claimant's interest in the property.  *$39,557.00*, __ F. Supp. 2d __, 2010 WL 475279, at *4.  Just as the claimant's purported filing in *$484,825.00* failed to adhere to Rule G(5), Madeline Azouki's Answer Certification here fails to comply with the strict requirements for a claim because it was not verified and contained no description of the claimant's interest in the property.  484 F.3d at 665.  Would-be Claimants' attempt to distinguish *$484,825.00* by arguing that "in that case the would-be claimant not only filed his Answer late but he failed to file any verification at all." (Would-be Claimants Letter Br. at 4.)  Yet this case presents nearly the same facts as *$484,825.00*:  a late Answer and no verified claim in compliance with Rule G(5) filed by either Would-be Claimant.

The Third Circuit held in *$484,825.00* that the verified claim requirement is the "most significant" of the requirements for statutory standing, and is "no mere procedural technicality."  484 F.3d at 664-65.  "Because of the important interests served by requiring a verified [claim], district courts are entitled to insist upon procedural regularity."  *Id.* at 665.  Would-be Claimants

both failed to file a proper verified claim under Rule G(5), and even if their purported claims had otherwise complied with the Rule, they were not timely filed.  Therefore, this Court will strike the Would-be Claimants' Answer with prejudice.  With no valid claim to the Defendant Property or valid answer to the Government's Complaint, this Court will enter default judgment in favor of the Government and ordering forfeiture of the Defendant Property to the Government.  *See id.* at 665 (affirming district court's entry of default judgment where potential claimant "altogether failed to file a verified [claim]" and purported submission was not timely filed).

## *Conclusion*

For the aforementioned reasons, the Court will grant the Government's motion to strike the Answer of Would-be Claimants Madeline Azouki and Sharbel Azouki and for entry of default judgment.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: April 26, 2010

      S/Garrett E. Brown, Jr.
Garrett E. Brown, Jr., Chief Judge
United States District Court